# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KIMBERLY M. KOVESDI** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 10-697** |
| **ALLSTATE IDEMNITY COMPANY** | * | **SECTION "L"(3)** |

## ORDER & REASONS

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 21) and Defendant's Motion for Summary Judgment (Rec. Doc. No. 11). The Court, having heard the parties' oral arguments and having reviewed the submitted memoranda and the applicable law, is ready to rule. For the following reasons, both motions are denied.

## I. BACKGROUND

This case arises out of a fire that occurred at Plaintiff Kimberly Kovesdi's residence at around 3 am on May 1, 2009 at 120 Clara Drive in Avondale, Louisiana. Plaintiff filed insurance claims with Defendant Allstate Indemnity Company, with whom she had a homeowner's insurance policy. Defendant investigated Plaintiff's claims and found the fire to be suspicious. The fire originated from the stove, and a front burner was left on. Plaintiff's partner, Ms. Patricia Bowers, told Defendant that she returned to the house at 2 am that night to check on bug bombs but that there was no fire. She speculated that she may have accidently turned on a burner knob with her hip when she reached to open the cabinet above the stove. According to Defendant, Plaintiff told the claims adjustor that she was experiencing financial difficulties.

The investigator of the Jefferson Parish Arson Investigation Unit (AIU) concluded after his own investigation that the fire was accidental. But Defendant nonetheless refused to tender

1

payments with respect to Plaintiff's claims because it believed that the AIU investigation was not sufficient and that there was reason to believe that Plaintiff intentionally caused the fire. About two months after the fire, Plaintiff retained an attorney, believing that Defendant's failure to remit any payment constituted a breach of its obligation under the insurance contract. At around the same time that Plaintiff obtained legal representation, Defendant requested that Plaintiff submit to an Examination Under Oath (EUO) and provide various financial records as required by the cooperation clause in her insurance contract. Through counsel, Plaintiff refused to do so.

In January 2010, Plaintiff filed suit. She alleged that Defendant had arbitrarily and capriciously failed to pay insurance claims or to otherwise make a written offer of settlement within 30 and 60 days of receiving proof of loss. She averred that as a result, Defendant was liable for damages, penalties, attorney's fees, and costs under the applicable Louisiana statutes.

## II. PRESENT MOTIONS

Plaintiff and Defendant have filed cross-motions for summary judgment.

Plaintiff's motion addresses only the issue of liability. She argues that she should prevail on the issue of liability on her claims that Defendant had arbitrarily and capriciously failed to pay insurance claims or to otherwise make a written offer of settlement within 30 and 60 days of receiving her proof of loss. Plaintiff's primary contention is that Defendant had no reason to withhold the insurance payments because following the completion of the AIU investigation, Defendant had no reasonable basis upon which to suspect that she intentionally caused the fire. Moreover, Plaintiff notes that while Defendant did dispute the extent of personal property damages sustained by Plaintiff, the parties did not dispute the dwelling damage estimate that Defendant made soon after the fire.

Defendant opposes Plaintiff's motion. Defendant argues in part that it had reason to

2

continue the investigation even though the AIU concluded that the fire was accidental. Defendant contends that the fire was suspicious and notes that it had hired its own fire investigator to see if the stove could be turn on in the way that Ms. Bowers had described. Defendant also asserts that Plaintiff had disclosed that she was in financial difficulties. Defendant states that when all is considered, it had a reasonable basis upon which to dispute the causation of the damages.

In its own motion for summary judgment, Defendant argues that it is entitled to judgment as a matter of law because of Plaintiff's failure to submit herself to an EUO and to provide financial documents in accordance with her insurance contract. Defendant argues that a breach of a cooperation clause constitutes a complete defense for an insurer with respect to a plaintiff's claim that it failed to make an insurance payment. Defendant argues that it is entitled to such a defense in this case.

Plaintiff opposes Defendant's motion. Plaintiff asserts that to her knowledge, Defendant did not make a request for an EUO and for financial documents until she retained counsel on the belief that Defendant had become liable to her for its failure to pay. She argues that under those circumstances, her refusal to submit to an EUO and to provide documents was thus justified and does not constitute grounds for summary judgment in favor of Defendant.

## III. LAW AND ANALYSIS

### 1. Standard of Review

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322 - 24, and Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249 - 50 (citations omitted).

**2. Plaintiff's Claims Regarding Defendant's Failure to Pay**

    **a. The applicable law**

Plaintiff argues that she is entitled to summary judgment on the issue of liability with respect to her claims that Defendant arbitrarily and capriciously failed to make insurance payments in violation of La. R.S. §§ 22:1892(A)(1) and 22:1973(A). Under Section 22:1892(A)(1), an insurer in Louisiana has the duty to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured . . . ." La. R.S. § 22:1892(A)(1). A failure to pay that is "arbitrary, capricious, or without probable cause"

4

renders an insurer liable for the resulting damages and for a statutory penalty, attorney's fees, and costs. *Id.* § 22:1892(B)(1). In a case where the loss results from fire, the aforementioned 30-day period does not begin to run until there is a "certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings." *Id.* § 22:1892(B)(2).

Under Section 22:1973(A), insurers in Louisiana owe the insured "a duty of good faith and fair dealing." *Id.* § 22:1973(A). An insurer breaches this duty if it fails to "pay the amount of any claim due [the insured] within sixty days after receipt of satisfactory proof of loss . . . when such failure is arbitrary, capricious, or without probable cause." *Id.* § 22:1973(B)(5). Such an insurer is liable for "any damages sustained as a result of the breach," *id.* § 22:1973(A), and may be liable for a penalty of up to twice the damages sustained, *id.* § 22:1973(C).

The Louisiana Supreme Court has recognized that the duty to pay under these two separate provisions is "virtually identical." *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 174 (La. 2000). Thus, to obtain the penalties and damages under either provision, an insured must demonstrate that "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within [30 or 60 days] of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *La. Bag. Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-1113 (La. 2008).

With respect to whether a failure to pay can be found to have been "arbitrary, capricious, or without probable cause," the Louisiana Supreme Court has drawn the distinction between amounts that the insurer does not dispute and those that it does dispute. *See id.* at 1114. An insurer is liable for any amount that it does not dispute, for "'there can be no good reason' -- or no probable cause -- for withholding [such an] amount." *Id.* (quoting *Hammett v. Fire Ass'n of*

*Phila.*, 160 So. 302, 304-05 (La. 1935)). Meanwhile, an insurer is liable for any amount that it does dispute, but for which it lacks a "substantial, reasonable, and legitimate" basis upon which to question the causation or extent of the loss. *Id.* at 1116; *see also id.* 1114-1115. Whether such a basis exists depends on the facts known to the insurer at the relevant time. *Id.* at 1114. If an insured is "unable to prove the exact extent of his damages," an insurer must "tender the reasonable amount which is due." *Id.* at 1115 (citing *McDill*, 475 So.2d at 1091). "[A]n insurer cannot 'stonewall' [such] an insured." *Id.*

### b. The proffered evidence in this case

In this case, Defendant was presented with claims for both dwelling damages and contents damages in the aftermath of the fire. Defendant asserts that it had two reasons for its decision not to make payments to Plaintiff. The first relates to the causation of the loss -- and thus extends to both the dwelling and the contents claims.[1] Defendant asserts that it did not make any payments because it had reason to believe that the fire was intentional and that Plaintiff had the motive to cause the loss. Def.'s Mem. at 2 (Rec. Doc. No. 33). The second reason relates to the contents claim only, and it concerns the extent of loss. Defendant asserts that it had reason to doubt Plaintiff's assertion that all personal property at Plaintiff's home belonged to her. *Id.* Because Plaintiff is the party moving for summary judgment on this claim, she must show that there is no genuine issue of fact as to whether Defendant had a reasonable basis upon which to question the causation of the loss. Plaintiff is unable to meet this high bar.

---

[1] In both her memorandum and at oral argument, Plaintiff characterizes the estimate of the dwelling damage made by Defendant on May 14, 2009 as "undisputed" and argues that Defendant had thus no reason to withhold the amount. Pl.'s Mem. at 11 (Rec. Doc. No. 21-3). While it is true that Defendant had no reason to dispute the *extent* of the loss that it estimated on its own, Defendant has argued that it did dispute the *causation* of the loss. Thus, the amount was disputed.

First, a review of the record indicates that there are facts in dispute as to whether Defendant had a reasonable basis upon which to believe that Plaintiff had the motive to cause the fire. On the one hand, Defendant points to evidence indicating that Plaintiff informed Defendant shortly after the fire that she was four months behind on her mortgage payments and that she had financial difficulties with her business. Pl.'s Ex. F at 54, 52, 47 (Rec. Doc. No. 21-9). The courts have recognized that evidence that the insured was in financial difficulties provides a basis upon which the finder of fact can infer that the insured had a motive to cause a fire. *See, e.g.*, *McClain v. Gen. Agents Ins. Co. of Am., Inc.*, 438 So.2d 599, 601 (La. Ct. App. 1983). Plaintiff disputes, however, whether she told Defendant that she was behind on her mortgage payments or was otherwise in financial difficulty. Pl.'s Statement of Disputed Material Facts at 3 (Rec. Doc. No. 15-1). Thus, there are facts in dispute regarding whether Defendant had a reasonable basis to believe that Plaintiff had a motive to cause the fire.

Second, there is also a genuine issue of fact as to whether Defendant had reason to believe that the fire was not accidental. On the one hand, Plaintiff argues that Defendant had no reason to believe that the fire was intentional because the investigator of the Jefferson Arson Investigation Unit, Thomas Lowe, concluded that the fire was accidental. *See* Pl.'s Ex. B at 2, 4 (Rec. Doc. No. 21-5). Plaintiff also points to evidence that the fire investigator hired by Defendant, Randy Bruff, agreed with Mr. Lowe in May 2009 that the fire was accidental. *See id.* at 2. Finally, Plaintiff notes evidence that Mr. Bruff concluded in a written report in June 2009 that he could not conclusively determine whether the fire was accidental or intentional. *See* Pl.'s Ex. O at 5 (Rec. Doc. No. 21-18).

As Defendant points out, however, there is evidence in this case that supports the finding that Defendant had reason to believe that the fire was intentional. First, Defendant argues that it

7

had reason not to consider Mr. Lowe's report as conclusive. In support of this, Defendant points to evidence that Mr. Lowe did not speak to Plaintiff herself in preparing his report. *See* Pl.'s Ex. B at 1 (Rec. Doc. No. 21-5). Second, Defendant also notes evidence that Plaintiff's partner provided inconsistent statements when she spoke with Mr. Bruff a few days after the fire. *See* Pl.'s Ex. F at 42 (Rec. Doc. No. 21-9). According to the claims history produced by Defendant, Plaintiff's partner at first stated to Mr. Bruff that although she did return to the house at around 2 am after she had left earlier in the evening, she did not go back inside the residence at that time. *See id.* When further questioned, she stated that she may have stepped into the kitchen upon her return. *Id.* This inconsistency could provide a reasonable basis upon which to conclude that the fire was not accidental.

      Finally, Defendant has noted that the explanation that Plaintiff and her partner provided with respect to the cause of the fire was suspicious. It is undisputed that the fire started near the kitchen stove and that the a burner was found turned on. *See* Pl.'s Ex. B at 4 (Rec. Doc. No. 21-5). According to the claims history report produced by Defendant, Plaintiff and her partner told Defendant that Plaintiff's partner could have accidentally turned on the burner when opening the cupboard above the stove. Pl.'s Ex. F at 44, 55 (Rec. Doc. No. 21-9). There is evidence that as early as May 7, Defendant requested that Mr. Bruff perform a test on a stove of the same model to see if the burner could be turned on in the way Ms. Bowers described. *Id.* at 38. Defendant also notes evidence that when Mr. Bruff performed the test, he was unable to turn the burner on by leaning against it. *Id.* at 25. Defendant also states that Plaintiff's explanation that the residents of her house had left that evening in order to set off bug bombs was unusual because the following day was a weekday and at least one child was of school age. *See id.* at 52.

      In sum, Plaintiff and Defendant have proffered conflicting evidence on whether

8

Defendant had a reasonable basis upon which to believe that Plaintiff had the motive to cause the fire and that the fire was intentional. There is thus a genuine issue of material fact as to whether Defendant had a reasonable basis upon which to question the causation of loss with respect to both the dwelling and the contents claim.[2] This precludes summary judgment on Plaintiff's claims that Defendant's failure to pay either of the claims was arbitrary and capricious under the applicable Louisiana statutes.

**3. Plaintiff's Claim Regarding Defendant's Failure to Make a Written Offer**

Louisiana imposes on insurers the separate duty to "make a written offer to settle any property damage claim . . . within thirty days after receipt of satisfactory proofs of loss of that claim." La. R. S. § 22:1892(A)(4). A failure to make a written offer that is "arbitrary, capricious, or without probable cause" renders an insurer liable for the resulting damages and for a statutory penalty, attorney's fees, and costs. *Id.* § 22:1892(B)(1). Although the aforementioned case law construing the meaning of the phrase "arbitrary, capricious, or without probable cause" relates to the duty to pay under Section 22:1892(A)(1), there is no reason to believe that the same standard does not apply to the duty to make a settlement offer under Section 22:1892(A)(4). Accordingly, in light of the above, summary judgment is also inappropriate with respect to Plaintiff's claim that Defendant was arbitrary and capricious in failing to make a written offer of settlement under Section 22:1892(A)(4).

**4. Defendant's Defense Regarding Plaintiff's Failure to Cooperate**

In its own motion, Defendant argues that it is entitled to summary judgment in this action because Plaintiff failed to fulfill her contractual duty to cooperate during the investigation of her

---

[2] In light of this, the Court need not address Defendant's second argument regarding the extent of Plaintiff's personal property loss.

insurance claim. The insurance policy in this case contains a standard "cooperation clause." Def.'s Ex. A at 9-10 (Rec. Doc. No. 11-3). That provision provides that "[i]n the event of a loss to any property that may be covered by this policy," the insured must, "[a]s often as [the insurer] reasonably require[s]," "submit to examinations under oath" and provide various documents. *Id.* at 10; *see also id.* at 5. This provision is consistent with the Standard Fire Policy mandated by statute. *See* La. R.S. § 22:1311(F).

### a. The applicable law

Louisiana law recognizes that an insured's failure to fulfill his duties under a cooperation clause may provide the insurer with a defense to a suit to recover under the policy. *See Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La. Ct. App. 1992). At the same time, however, Louisiana law does not regard a cooperation clause as "an escape hatch that an insurer may use to flee from liability." *Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, at *8 (E.D. La. 2010). Indeed, the dismissal of an insured's suit based on a breach of a cooperation clause is "a draconian remedy which [courts] do not ordinarily favor." *Lee*, 607 So.2d at 685.

Thus, for an insurer to obtain such a dismissal, it must "show a diligent effort to obtain [the requested] information." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., v. Cagle*, 68 F.3d 905, 912 (5th Cir. 1995) (citing *Pelas v. Am. Employer's Ins. Co.*, 299 So.2d 815, 816 (La. Ct. App. 1974)). In addition, the insurer must show that "the breach on the part of the insured [was] both material and prejudicial to [it]." *Williams v. Lowe*, 831 So.2d 334, 336 (La. Ct. App. 2002); *accord Desadier v. Safeway*, 712 So.2d 925, 928 (La. Ct. App. 1998); *Freyou v. Marquette Cas. Co.*, 149 So.2d 697, 699-700 (La. Ct. App. 1963). The requirement that the insurer show "actual prejudice" is "central." *Trosclair v. CNA Ins. Co.*, 637 So.2d 1168, 1170 (La. Ct. App. 1994). More broadly, the determination of whether a breach has been material and prejudicial is highly

fact-specific, and as such, it is doubtful that "summary judgment is ever appropriate" on the basis of an insured's alleged failure to cooperate. *Id.* at 1170 n.2.

Defendant questions whether it must show that Plaintiff's refusal to cooperate was prejudicial to it. But a number of authorities cited by Defendant in its brief do not involve Louisiana law. For instance, the Fifth Circuit's decision in *United State Fidelity & Guarantee Co. v. Wigginton*, 964 F.2d 487 (5th Cir. 1992), is inapposite because it concerns a dispute arising under Mississippi law, *see id.* at 490. To be sure, Defendant has cited two Louisiana appellate cases that do not mention the prejudice requirement. *See Lee*, 607 So.2d at 688; *see also Brantly v. State Farm Ins. Co.*, 865 So.2d 265, 271-72 (La. Ct. App. 2004). But neither of these decisions attempts to identify the elements of the defense, and unlike the Fifth Circuit's decision in *Wigginton*, which affirmatively indicates that Mississippi law does not require a showing of prejudice, neither of these cases does so. Defendant cites, and additional research reveals, no authority that supports Defendant's assertion.

In light of these circumstances, it is not surprising that this Court has adhered to the recognition that under Louisiana law, an insurer must show that an insured's failure to cooperate was prejudicial to it. *See*, *e.g.*, *Jackson*, 2010 WL 724108, at *8 (Vance, C.J.); *Flair v. State Farm Fire & Cas. Co.*, No. 08-3196, 2009 WL 361114, at *5 (E.D. La. 2009) (Africk, J.); *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361, at *4 (E.D. La. 2008) (Feldman, J.); *Arbor Mall, LLC v. Am. Empire Surplus Lines Ins. Co.*, No. 06-7661, 2007 WL 3172833, at *1 (E.D. La. 2007) (Duval, J.). These decisions, together with the cases decided by the Louisiana appellate courts cited above, firmly indicate that under Louisiana law, an insurer must show prejudice in order to avail itself of the defense based on an insured's failure to cooperate.

### b. The proffered evidence in this case

In this case, Defendant argues that Plaintiff breached her duty to cooperate in two ways: first, by refusing to submit to an EUO, and second, by failing to provide financial records. Def.'s Mem. at 4 (Rec. Doc. No. 11-3). Defendant is not entitled to summary judgment, however, because when the facts are viewed in the light most favorable to Plaintiff, Defendant cannot show that Plaintiff's refusal to submit to an EUO and her alleged refusal to provide financial records were prejudicial to it.

Plaintiff states in an affidavit that Defendant did not seek an EUO until after she had obtained legal representation -- that is, until after she thought that Defendant had breached its duty to make insurance payments. Pl.'s Ex. E at 1 (Rec. Doc No. 15-6). The critical issue, then, is whether Plaintiff has proffered enough evidence to sustain a finding that Defendant did in fact breach its duty to make insurance payments prior to its request for an EUO. The answer to this question is in the affirmative. As noted above, Plaintiff has proffered evidence that Defendant controverts, but that if found to be credible, would show that Defendant had no reasonable basis to question the causation of the loss. In particular, as previously noted, the investigator from the Jefferson Parish AIU and the investigator hired by Defendant concluded in their reports that they could not determine that the fire was intentional. *See* Pl.'s Ex. B at 2, 4 (Rec. Doc. No. 21-5); Pl.'s Ex. O at 5 (Rec. Doc. No. 21-18). Moreover, the allegedly inconsistent statements by Plaintiff's partner to Mr. Bruff can be explained by Ms. Bowers' further statement that she did not want to say that she went back inside the home because she believed that it would make Plaintiff angry. *See* Pl.'s Ex. F at 42 (Rec. Doc. No. 21-9). Finally, Plaintiff can also point to evidence that while Mr. Bruff could not turn on the stove burner by replicating the movement described by Ms. Bowers, his supervisor was later able to do so. *Id.* at 18.

In sum, Plaintiff has proffered sufficient evidence to support the finding that Defendant had no reasonable basis upon which to question the causation of the loss. Moreover, because Plaintiff did not dispute the original estimate made by Defendant of the dwelling damages, *see id.* at 36, this would be an undisputed amount that Defendant would not have been entitled to withhold. *See La. Bag. Co.*, 999 So.2d at 1114, 1115. To the extent that Defendant was thereby in breach of its duty at the time that it requested an EUO and financial records, she was under no duty to provide her cooperation. Indeed, Louisiana courts have long recognized that a cooperation clause does not impose "the obligation [on] an insured to assist the insurance company to defeat its liability." *Trosclair*, 637 So.2d at 1170; *accord Freyou*, 149 So.2d at 702 (on application for rehearing). Thus, when the facts are viewed in the light most favorable to Plaintiff, it cannot be said that Plaintiff's refusal to cooperate with Defendant was prejudicial to it.

Finally, it should be noted that Plaintiff has proffered evidence that prior to her decision to retain counsel, she did discharge her duty under the cooperation clause to "aid the company to determine its liability under the policy." *Freyou*, 149 So.2d at 702. In particular, on May 4, 2009, she signed a document authorizing Allstate to obtain financial and other documentation from credit bureaus, consumer reporting agencies, financial institutions, law enforcement agencies, employers, and other entities. *See* Pl.'s Ex. F (Rec. Doc. No. 15-7). Defendant does not otherwise allege that Plaintiff refused to be interviewed by claims adjustors and other personnel or that she blocked access to her property after the fire. And Plaintiff has stated in an affidavit that she "did everything within her power that was requested of her by Allstate" from the date of the fire to the date on which she obtained legal representation. Pl.'s Ex. E (Rec. Doc. No. 15-6). When these proffered facts are viewed in the light most favorable to Plaintiff, it cannot be said

that Plaintiff's subsequent refusal to submit to an Examination Under Oath and to provide financial records prejudiced Defendant in its attempt to determine its liability. Plaintiff's alleged non-cooperation two months after the investigation began did not render Defendant "unable to obtain information while it [was] still fresh." *Holden v. Connex-Metalna Mgmt. Consulting*, No. 98-3326, 2000 WL 1741839, at *2 (E.D. La. 2000). Defendant has thus not shown that it is entitled to summary judgment based on Plaintiff's alleged failure to cooperate.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 21) and Defendant's Motion for Summary Judgment (Rec. Doc. No. 11) are hereby **DENIED**.

New Orleans, Louisiana, this 23rd day of September, 2010.

_____
UNITED STATES DISTRICT JUDGE